IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAULA FISHER,

    Plaintiff,

v.

EVERETT FINANCIAL, INC. d/b/a
SUPREME LENDING; ALLIANT
CREDIT UNION; CENLAR FSB;
PADGETT LAW GROUP; ALEC
HAYES, *individually and in his
capacity as attorney for Alliant Credit
Union And Cenlar FSB*; JOHN DOES 1–
4,

    Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-01034-VMC-JEM

<u>UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION</u>

Pending before the Court are three motions to dismiss the second amended complaint. (Docs. 87; 89; 90.) For the below reasons, the Court **RECOMMENDS** that the pending motions to dismiss the second amended complaint, (Docs. 87; 89; 90), be **GRANTED**, and that the federal claims (counts 1-4 and 23) be **DISMISSED WITH PREJUDICE**, and the state claims (counts 5-22) be **DISMISSED WITHOUT PREJUDICE**.

## I.    <u>BACKGROUND</u>

Plaintiff, proceeding pro se, initiated this action by filing a complaint on February 27, 2025. (Doc. 1.) On May 19, 2025, the Court entered an order striking Plaintiff's original complaint, and ordering Plaintiff to file an amended complaint within 30 days that adhered to certain guidelines. (Doc. 42.) In addition to finding that Plaintiff's original complaint was a shotgun pleading, the Court also found that Plaintiff had failed to show that this Court has subject matter jurisdiction. (*Id.*) Plaintiff made a conclusory statement that the Court has diversity jurisdiction, but Plaintiff failed to sufficiently allege diversity, and the Court advised Plaintiff that she must establish subject matter jurisdiction in the amended complaint. (*Id.*; *see also* Doc. 1 at ¶5 (citing 28 U.S.C. § 1332(a)). The Court denied the motions to dismiss that were directed to the original complaint as moot, without prejudice to Defendants filing new motions to dismiss the later-filed amended complaint if justified, and the Court also denied all other pending motions without prejudice given that subject matter jurisdiction was unclear. (Doc. 42.)

On June 5, 2025, Plaintiff timely filed the first amended complaint. (Doc. 43.) Defendants filed motions to dismiss the first amended complaint, (Docs. 44; 45; 47), and the parties also filed multiple other motions, (Docs. 53; 54; 55; 57; 60; 70; 71). On August 5, 2025, given that the Court first needed to resolve whether it has subject matter jurisdiction before addressing the merits of any other motions or matters, the Court denied without prejudice all motions that were unrelated to the pending motions to dismiss. (Doc. 76.) The Court also stayed the proceedings

2

until 14 days after final resolution of the motions to dismiss, or upon separate order of this Court, and further instructed the parties that no additional motions shall be filed during the referenced stay absent extraordinary circumstances. (*Id.*)

On August 6, 2025, Plaintiff filed a motion to strike, (Doc. 78), and a motion seeking to amend the jurisdictional allegations in the first amended complaint, (Doc. 81). The Court acknowledged that, given the timing, Plaintiff filed these two motions prior to receiving the Court's August 5th order staying the case. (Doc. 83 at 2.) The Court further decided that, given Plaintiff's pro se status and the fact that, as addressed in its prior orders, subject matter jurisdiction is a threshold issue, it would grant Plaintiff "**ONE** additional opportunity to amend her complaint." (*Id.* (emphasis in original).) The Court advised Plaintiff that she must adhere to the Court's previous guidelines, and that "she must include *all* information relevant to subject matter jurisdiction, and *all* claims that she wishes to proceed upon in the second amended complaint," as the Court "will not read multiple complaints in tandem." (*Id.* at 3 (emphasis in original).) The Court, therefore, struck the first amended complaint, and denied the pending motions to dismiss that were directed to the first amended complaint as moot, without prejudice to Defendants filing new motions to dismiss the later-filed second amended complaint if justified. (*Id.* at 2-3.) The Court again instructed the parties that no additional motions shall be filed, except for the second amended complaint and the related motion to dismiss filings, absent extraordinary circumstances, and it again stayed the proceedings

3

until 14 days after final resolution of the motions to dismiss the second amended complaint, or upon separate order of this Court.[1] (*Id.* at 3-4.)

On August 28, 2025, Plaintiff timely filed the second amended complaint, which names the following Defendants—(1) Everett Financial, Inc. d/b/a Supreme Lending; (2) Alliant Credit Union; (3) Cenlar FSB; (4) Padgett Law Group; (5) Alec Hayes, individually, and in his capacity as attorney for Alliant Credit Union and Cenlar FSB; and (6) John Does 1–4. (Doc. 85.) All Defendants, except for the fictitious John Does, have timely filed motions to dismiss the second amended complaint, which are pending. (Docs. 87 (Alliant Credit Union, Cenlar FSB, and Alec Hayes); 89 (Padgett Law Group); 90 (Everett Financial, Inc.). The motions have been fully briefed, (Docs. 91; 92; 93; 94), and are ripe for review.

## II.   DISCUSSION

In the second amended complaint, instead of diversity jurisdiction, Plaintiff now alleges that this Court has federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.[2] (Doc. 85 at 2-3, ¶¶1-7.) Jurisdiction under § 1331 is based on the fact that Plaintiff alleges

---

[1] The Court explained that if Defendants filed answers to the second amended complaint, instead of motions to dismiss, the Court would review the second amended complaint for purposes of subject matter jurisdiction, and then advise the parties further at that time regarding the stay. (Doc. 83 at 4.)

[2] Based on Plaintiff's citizenship allegations, there is not complete diversity among the parties under 28 U.S.C. § 1332, as Plaintiff initially alleged. (Doc. 85 at 4-5, ¶10.)

violations of both the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* (Doc. 85 at 2-3, ¶¶3-7.) Upon review, the Court finds that on the face of the second amended complaint, subject matter jurisdiction is sufficiently alleged, and the Court will proceed with review of all claims and arguments under Federal Rule of Civil Procedure 12(b)(6).[3] *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997).

The second amended complaint contains 23 counts, as follows:

- Count 1: Violation of RESPA against Cenlar FSB;

- Count 2: Violation of FDCPA against Padgett Law Group;

- Count 3: Violation of FDCPA against Cenlar FSB;

- Count 4: Violation of FDCPA against Alec Hayes;

- Count 5: Wrongful foreclosure against Alliant Credit Union;

- Count 6: Wrongful foreclosure against Padgett Law Group;

---

[3] Plaintiff asserts that Defendants Cenlar FSB, Alliant Credit Union, and Alec Hayes failed to comply with the Court's order to address jurisdiction, because they filed a joint motion to dismiss, (Doc. 92 at 4, 8), and that Defendant Padgett Law Group provided only a bare jurisdictional citation, (Doc. 93 at 8-9 and n. 3), but Plaintiff is mistaken. The Court did not order the parties to file separate motions, as Plaintiff contends. The Court stated that "[i]f Defendants file new motions to dismiss they MUST specifically address whether Plaintiff has sufficiently established subject matter jurisdiction, as well as any other arguments they wish to raise." (Doc. 83 at 3-4.) Defendants Cenlar FSB, Alliant Credit Union, and Alec Hayes, adequately addressed jurisdiction in their joint motion, as did Defendant Padgett Law Group. (Docs. 87-1 at 6-7; 89-1 at 2-6.)

- Count 7: Conversion against Supreme Lending;

- Count 8: Conversion against Alliant Credit Union;

- Count 9: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing against Alliant Credit Union;

- Count 10: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing against Cenlar FSB;

- Count 11: Declaratory Judgement under 28 U.S.C. § 2201 and Alternative Quiet Title under Georgia Law against Alliant Credit Union;[4]

- Count 12: Declaratory Judgment under 28 U.S.C. § 2201 and Alternative Quiet Title under Georgia Law against Padgett Law Group;

- Count 13: Declaratory Judgment under 28 U.S.C. § 2201 and Alternative Quiet Title under Georgia Law against Cenlar FSB;

- Count 14: Declaratory Judgment under 28 U.S.C. § 2201 and Alternative Quiet Title under Georgia Law against Supreme Lending;

- Count 15: Tortious Interference with Contractual Rights against Padgett Law Group;

---

[4] The Declaratory Judgment Act—28 U.S.C. §§ 2201-2202—does not, itself, confer federal jurisdiction, and plaintiffs are required to allege facts showing that the controversy is within the Court's original jurisdiction. *See Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1340 (11th Cir. 2018); *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir. 2003) (explaining that "[t]he operation of the Declaratory Judgment Act is procedural only") (alteration in original); *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989) (explaining that a suit brought under the Declaratory Judgment Act "must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question"); *see also Woodman v. U.S. Bank*, 679 F. App'x 908, 909 (11th Cir. 2017) (the jurisdiction of the federal court is limited to actual cases and controversies).

- Count 16: Tortious Interference with Contractual Rights against Supreme Lending;

- Count 17: Wrongful foreclosure against John Doe 1;

- Count 18: Wrongful foreclosure against John Doe 2;

- Count 19: Fraudulent Concealment against John Doe 3;

- Count 20: Wrongful foreclosure against John Doe 4;

- Count 21: Misrepresentation against John Doe 4;

- Count 22: Wrongful recording of deed against John Doe 4; and

- Count 23: Violation of FDCPA against John Doe 4.

(Doc. 85 at 12-17.)

### A.    Rule 12(b)(6) Standard

Under Rule 12(b)(6), the Court is authorized to dismiss a complaint for failure to state a claim. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); Fed. R. Civ. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true, and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). But the same does not apply to legal conclusions, which "are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Neitzke*, 490 U.S. at 326-27. And matters outside the pleadings generally cannot be considered, though there are some exceptions to

that general rule. *Tuley v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973)[5] (if matters outside the pleadings are considered, and not excluded by the court, the 12(b)(6) motion to dismiss must be treated as a motion for summary judgment); *Sneed v. Ken Edwards Enterprises, Inc.*, No. 1:07-CV-1088-RLV-LTW, 2008 WL 11337755, at *2 (N.D. Ga. May 8, 2008).

The pleading standard under Rule 8(a)(2) is liberal, requiring only notice pleading—a short and plain statement showing that the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a Rule 12(b)(6) motion to dismiss, "[s]pecific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93, (2007); *see also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation," but does not require "detailed factual allegations"). The complaint need only contain sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (explaining that after *Iqbal*, there is no longer a "heightened pleading" standard in "cases governed by Rule 8(a)(2)," which includes civil rights cases). A claim is facially plausible when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 US. at 678. This plausibility

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were issued before October 1, 1981.

standard is not a "probability requirement," but it requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and it must allege sufficient facts to show that it is reasonable to expect that discovery will lead to evidence supporting the claim. *Twombly*, 550 U.S. at 556 (explaining that requiring plausible grounds to infer an agreement does not impose a probability requirement, "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the] agreement") (internal alteration and citations omitted); *see also Evans v. Freese II, Inc.*, No. 1:20-CV-01179-ELR, 2020 WL 10110995, at *3 (N.D. Ga. Dec. 29, 2020); *Thorpe v. Dumas*, No. 1:18-CV-3817-AT, 2018 WL 10742753, at *2 (N.D. Ga. Nov. 8, 2018), aff'd, 788 F. App'x 644 (11th Cir. 2019), and aff'd, 788 F. App'x 644 (11th Cir. 2019). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense in reviewing the plaintiff's allegations." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations and citation omitted).

"Pleadings do not require any particular technical form and must be construed 'so as to do justice.'" *Doe v. Gwinnett Cnty. Pub. Sch.*, No. 1:18-CV-05278-SCJ, 2019 WL 12336248, at *4 (N.D. Ga. Aug. 22, 2019) (citing Fed. R. Civ. P. 8(d)(1), (e)). A plaintiff's allegations in the complaint are construed liberally because "the issue is not whether plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support its claims." *S. Ent. Television, Inc.*

*v. Comcast Corp.*, 270 F. App'x 747, 748 (11th Cir. 2008) (affirming district court's application of the dismissal standard under Rule 12(b)(6) and *Twombly* for complaint alleging breach of contract); *see also Doe*, 2019 WL 12336248, at *4 (explaining that because "the purpose of Rule 8(a) is simply to provide notice to the defendant of the nature of the claims and the grounds on which those claims rest, pleadings are generally given a liberal reading when addressing a motion to dismiss"). Notably, a plaintiff need not allege in the complaint all of the prima facie elements required to ultimately prevail on a claim, and the Court applies the wrong legal standard if it holds a plaintiff to the prima facie elements at the initial pleading stage. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) ("a plaintiff need not plead the elements of a prima facie case to survive a motion dismiss"); *McManus v. Amerijet Int'l, Inc.*, No. 23-13554, 2024 WL 4003391, at *3 (11th Cir. Aug. 30, 2024) (the prima facie case relates to the employee's burden to present evidence that raises an inference of discrimination, it is not the threshold for surviving a motion to dismiss; thus, at the pleading stage, a discrimination complaint need only provide enough factual matter, taken as true, to suggest intentional discrimination on a protected ground) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002) and *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)); *see also Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"); *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018) (finding that, although the plaintiff's complaint alleging age discrimination did not establish a prima facie case, she alleged facts that were

"adequate to raise her right to relief above a speculative level"). But "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007); *see also Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

A pro se pleading is held to a less stringent standard than pleadings drafted by lawyers, but although a pro se complaint is liberally construed, *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008), a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Leonard v. F.B.I.*, 405 F. App'x 386, 387 (11th Cir. Dec. 14, 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court is under no duty to "re-write" a pro se plaintiff's complaint to find a claim. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (though a pro se pleading is liberally construed, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotations and citations omitted); *see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. Jan. 9, 2008) (holding that leniency in construing pro se pleadings "does not permit the district court to act

11

as counsel for a party or to rewrite deficient pleadings") (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

### B. Federal Claims

Turning first to the federal claims, five counts allege that Defendants Cenlar FSB, Padgett Law Group, Alec Hayes, and John Doe 4, violated federal law,[6] as follows:

- Count 1: Violation of RESPA against Cenlar FSB;
- Count 2: Violation of FDCPA against Padgett Law Group;
- Count 3: Violation of FDCPA against Cenlar FSB;
- Count 4: Violation of FDCPA against Alec Hayes;
- Count 23: Violation of FDCPA against John Doe 4.

(Doc. 85 at 12-13, 17.)

### (i) Allegations in the Second Amended Complaint

The following facts are alleged in the second amended complaint:[7]

---

[6] As noted above, the Declaratory Judgment Act is procedural only, and suit brought under the Declaratory Judgment Act "must state some independent source of jurisdiction." *See Supra*, n.3. Here, the counts that cite to the Declaratory Judgment Act allege violations of state law, (counts 11-14), and as discussed further below, the Court recommends declining the exercise of supplemental jurisdiction over the state law claims. *See Infra*, Section II(C).

[7] To the extent that Plaintiff's responses to the pending motions to dismiss contain additional factual allegations that are not included in the second amended complaint, (Docs. 91-93), the Court cannot consider them. A party cannot amend a complaint through its response to a motion to dismiss. *See In re Androgel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) (J. Thrash) ("In the post-*Twombly* world, the complaint is judged as it is and not on whether a set of facts could be imagined that would support the claim"); *see also*

- Plaintiff's real property was located in Fulton County, Georgia, and it was encumbered by a mortgage loan that was serviced by Cenlar FSB, (Doc. 85 at 6, ¶¶12-13);

- Alliant Credit Union told regulators the foreclosure was judicial and handled through the courts, (*Id.* at 7, ¶14);

- A deed under power, used only in nonjudicial foreclosures, was prepared through Padgett Law Group, and it was recorded in Fulton County, (*Id.* at 7, ¶15);

- No Georgia judgment of foreclosures exists, (*Id.* at 7, ¶16);

- Alliant Credit Union's bid sheet shows a foreclosure sale on January 2, 2024, (*Id.* at 7, ¶17);

- Between February 2024 and April 2024, Plaintiff sent multiple written requests to Padgett Law Group seeking reinstatement figures, payoff information, and clarification of foreclosure status, but despite receiving these requests, Padgett Law Group failed to provide accurate and consistent responses, instead issuing contradictory statements regarding the foreclosure, (*Id.* at 7-8, ¶¶21, 23);

---

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (explaining that a plaintiff cannot amend the complaint through argument in a brief); *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012); *Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1292 n.4 (N.D. Ga. 2019) (a plaintiff cannot amend the complaint via argument made in opposition to a motion to dismiss). The Court also previously instructed Plaintiff that: (1) she must assert all claims that she wished to proceed upon in her amended complaint; (2) she must provide "specific, non-conclusory factual allegations that directly pertain to this case, [and] suggest support for the required elements of each claim"; and (3) she must "comply with Rules 8 and 10 of the Federal Rules of Civil Procedure," which are available on the Court's website. (Docs. 42 at 8; 83 at 3; *see also* Doc. 3 (Notice to Pro Se Plaintiffs).)

- On May 2, 2024, Supreme Lending received a wire payoff of $807,552, (*Id.* at 8, ¶24);

- The payoff balance was $627,552, leaving a surplus of $180,000, (*Id.* at 8, ¶25);

- Supreme Lending promised in writing to return the surplus within 30 days, but the surplus was never returned, and instead, the surplus was transferred to Alliant Credit Union without authorization, (*Id.* at 8, ¶¶26-28);

- On May 8, 2024, Padgett Law Group said a foreclosure sale occurred on May 7, 2024, (*Id.* at 7, ¶18);

- On May 9, 2024, Padgett Law Group admitted the file was "flagged for litigation," (*Id.* at 7, ¶19);

- Cenlar FSB separately confirmed the foreclosure sale was canceled, (*Id.* at 7, ¶20);

- Padgett Law Group identifies itself as a foreclosure and debt-collection law practice, and by its own representation is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), (*Id.* at 7, ¶22);

- In 2024, Cenlar FSB issued a 1099-A using its EIN and listing itself as "lender," though the deed under power reflected Alliant Credit Union, (*Id.* at 8, ¶29);

- The $180,000 matched the surplus described above, (*Id.* at 8, ¶30);

- Plaintiff requested reinstatement and redemption figures from Alliant Credit Union, Padgett Law Group, and Cenlar FSB, (*Id.* at 8, ¶31);

- Cenlar FSB stated reinstatement was not permitted, contrary to loan documents, (*Id.* at 8, ¶32);

- Defendants offered HAF paperwork, but refused to accept funds, (*Id.* at 9, ¶33);

- Plaintiff offered to surrender voluntarily to avoid an eviction record, but Padgett Law Group nevertheless pursued eviction, causing Plaintiff lasting credit and housing harm, (*Id.* at 9, ¶34);

- Alec Hayes told Plaintiff that foreclosure was proceeding despite Cenlar FSB's cancellation notice, (*Id.* at 9, ¶35);

- Between October 2023 and February 2025, Plaintiff sent multiple Qualified Written Requests (QWRs) to Cenlar FSB, including a written request delivered by FedEx, seeking reinstatement figures, payoff information, loss mitigation and clarification of foreclosure status, but Cenlar FSB failed to timely and adequately respond to multiple requests as required by 12 U.S.C. § 2605(e), (*Id.* at 9, ¶36);

- On February 20, 2025, Plaintiff sent Cenlar FSB a QWR under 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35-36, (*Id.* at 9, ¶37);

- Cenlar FSB failed to acknowledge within five days, and failed to provide a substantive response within 30 days, (*Id.* at 9, ¶¶38-39);

- The deed under power recorded in Fulton County bears the signatures of two individuals acting on behalf of Alliant Credit Union, pleaded as John Doe 1 and John Doe 2, (*Id.* at 10, ¶40);

- Prior to this litigation, an individual acting on behalf of Supreme Lending, pleaded as John Doe 3, participated in the concealment, alteration and circulation of key documents material to the foreclosure and payoff process, (*Id.* at 10, ¶41); and

- An individual acting on behalf of Padgett Law Group, pleaded as John Doe 4, participated in representing foreclosure status, including asserting a May 7, 2024, sale, and preparing or recording the deed under power, (*Id.* at 10-11, ¶42).

### (ii) Public Records

Defendant Padgett Law Group attached the following public records in support of its motion to dismiss, which the Court may consider.[8]

(1) a home equity line of credit (HELOC) security deed, executed on October 15, 2021, and recorded on October 20, 2020, at Fulton County Deed Book 62464, pages 272-283, showing that Plaintiff obtained a $151,000 line of credit from Alliant Credit Union, which was secured by the real property at 305 Eagles Pass, Alpharetta, Georgia 30004, and that Plaintiff also signed a waiver of borrower's rights acknowledging that Alliant Credit Union has "the right to accelerate the debt and the Power of Attorney given herein to [Alliant Credit

---

[8] Though matters outside of a complaint generally cannot be considered when reviewing a Rule 12(b)(6) motion to dismiss, there are exceptions to that general rule, including that the Court may take judicial notice of public records. *McCone v. Thorpe*, 828 F. App'x 697, 698 (11th Cir. 2020) ("A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment"); *see also Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action") (citing *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007)). Defendants all refer to the two public records provided by Defendant Padgett Law Group, which as discussed, the Court takes judicial notice of, but to the extent that Defendants refer to any county public records that they did not provide to the Court, the Court does not take judicial notice of those records, as it would be based only on the party's representation of what the record contains. Specifically, Defendant Everett Financial, Inc. refers to other Fulton County deed records that it does not provide, (Doc. 90-1 at 3-5), and the Court does not have its own access to Fulton County deed records. The failure to provide those records appears to be of no consequence, however, given that Everett Financial, Inc. is not included in any federal claims, and the Court recommends declining supplemental jurisdiction, as discussed further below. *See Infra*, Section II(C).

Union] to sell the premises by nonjudicial foreclosure upon default by [Plaintiff] without any judicial hearing and without any notice other than such notice as required to be given under the provisions hereof," (Doc. 89-2);

(2) a deed under power recorded on July 16, 2024, at Fulton County Deed Book 68033, pages 90-91, showing that, after advertising the property for sale for four consecutive weeks in the Daily Report, Alliant Credit Union placed Plaintiff's property—305 Eagles Pass, Alpharetta, Georgia 30004—up for sale to the highest bidder at a non-judicial foreclosure sale on May 7, 2024, due to Plaintiff having defaulted on repayment of the loan secured by the property, and Alliant Credit Union was the highest bidder, (Doc. 89-3).

The deed under power further shows that, after recording, the deed was to be returned to Defendant Padgett Law Group. (*Id.*)

### (iii) Analysis

#### (a)    FDCPA

The purpose of the FDCPA, a consumer protection statute enacted in 1977, is to eliminate abusive debt collection practices, to ensure that debt collectors who refrain from using abusive collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers from debt collection abuses. *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 658 (11th Cir. 2017); *Goia v. CitiFinancial Auto*, 499 F. App'x 930, 938 (11th Cir. 2012). To establish a violation under the FDCPA, a plaintiff must show that: "(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the

Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Buckley v. Bayrock Mortg. Corp.*, No. 1:09-CV-1387-TWT-RGV, 2010 WL 9476172, at *6 (N.D. Ga. Jan. 12, 2010) (internal citations and alterations omitted); *Brockman v. CB Collection, Inc.*, No. 4:09-CV-053-HLM-WEJ, 2009 WL 10712200, at *3 (N.D. Ga. Nov. 23, 2009), report and recommendation adopted, No. 4:09-CV-0053-HLM, 2009 WL 10712219 (N.D. Ga. Dec. 14, 2009). Though, as discussed above, Plaintiff need not allege with precision all of the elements required to ultimately prevail on her claims in order to survive dismissal of the complaint, reviewing the elements aids the Court in determining if Plaintiff has alleged facts that are "adequate to raise [the] right to relief above a speculative level." *See Twombly*, 550 U.S. at 555; *Buchanan*, 727 F. App'x at 642.

"The requirements of the FDCPA apply 'only to professional debt-collectors[.]'" *Kurtzman*, 709 F. App'x at 658 (citations omitted). The FDCPA has both a "primary definition" and a "limited-purpose definition" of the term "debt collector." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 473 (2019). The first sentence of § 1692a(6) gives the primary definition, providing that "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *See* 15 U.S.C. § 1692a(6); *Obduskey*, 586 U.S. at 473; *see also Kurtzman*, 709 F. App'x at 658. The third sentence of § 1692a(6) gives the limited-purpose definition, providing

18

that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *See* 15 U.S.C. § 1692a(6); *Obduskey*, 586 U.S. at 473.

In other words, third-party debt collection agents generally qualify as "debt collectors" under the FDCPA, but "those who seek only to collect for themselves loans they originated generally do not." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 81 (2017). Nor does a "debt purchaser" who collects debts for its own accounts trigger the statutory definition of "debt collector." *Id.* at 81-88. It matters only whether the entity or individual is collecting on behalf of itself or "another." *Id.* at 83. And in *Obduskey*, the Supreme Court clarified that, "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Obduskey*, 586 U.S. at 477.

Plaintiff alleges that Defendants Padgett Law Group, (count two), Cenlar FSB, (count 3), Alec Hayes (count four), and John Doe 4, (count 23), violated the FDCPA. (Doc. 85.) Taking the allegations in the complaint as true, Cenlar FSB and Alec Hayes are not "debt collector[s]." Plaintiff alleges that Cenlar FSB is the servicer of her mortgage loan, (Doc. 85 at 6, ¶13), and according to the caption of Plaintiff's complaint, Alec Hayes is the attorney for Cenlar FSB and Alliant Credit Union, (Doc. 85 at 1; *see also* Doc. 85 at 9 ¶35.) According to the public records, Alliant Credit Union is a lender, and to the extent it was collecting, it was collecting its own account. (Docs. 89-2; 89-3.) The FDCPA, therefore, does not apply to them, and counts three and four fail to state a plausible claim. *See*

19

*Hendrix-Smith v. JP Morgan Chase Bank N.A.*, No. 20-10831, 2021 WL 4059784, at *3 (11th Cir. Sept. 7, 2021) (affirming dismissal for failure to state a claim because neither Chase Bank nor Bank of America were "debt collector[s]" for purposes of the FDCPA; Bank of America was collecting a debt owed itself through assignment, and Chase was the loan servicer).

As to Padgett Law Group, Plaintiff alleges that it "is a foreclosure and debt-collection company," and that "by its own representations [it] is a 'debt collector' as defined by the FDCPA, 15 U.S.C. § 1692a(6)." (Doc. 85 at 4, 7, ¶¶10, 22.) Plaintiff alleges no other facts to support her conclusion that Padgett Law Group qualifies as a "debt collector" under one of the FDCPA definitions discussed above, (Doc. 85), and when "allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). But even if the Court finds that Plaintiff has sufficiently alleged that Padgett Law Group is a "debt collector," the complaint still fails to state a plausible FDCPA claim against Padgett Law Group.

First, there are no allegations from which the Court can reasonably infer that the debt at issue qualifies as a consumer debt. To recover under the FDCPA, "a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010); *see also Nwaizuzu v. Dunlap Gardiner Att'ys at L., LLP*, No. 1:17-CV-3850-ELR-JCF, 2019 WL 2323611, at *3 (N.D. Ga. Jan. 22, 2019), report and recommendation adopted, No. 1:17-CV-03850-ELR, 2019 WL 2323586 (N.D. Ga.

20

Feb. 7, 2019). "Debt" is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Oppenheim*, 627 F.3d at 837 (citing 15 U.S.C. § 1692a(5)); *Nwaizuzu*, 2019 WL 2323611, at *3. Under the plain language of the statute, "not every obligation to pay constitutes a debt subject to the FDCPA." *See Samuel v. Ocwen Loan Servicing, LLC*, No. 1:14-CV-02398-ELR-LTW, 2015 WL 11256663, at *6 (N.D. Ga. Feb. 12, 2015), report and recommendation adopted, No. 1:14-CV-02398-ELR, 2015 WL 11347591 (N.D. Ga. Apr. 15, 2015). Debts that are incurred through activity relating to rental properties or for investment purposes do not fall under the protection of the FDCPA. *Nwaizuzu*, 2019 WL 2323611, at *4. The FDCPA "does not apply to transactions having a business or commercial purpose," and many courts have "soundly rejected" the proposition that mortgage debt for rental or investment property is "debt" for purposes of the FDCPA. *Samuel*, 2015 WL 11256663, at *6 (collecting cases).

Here, there is only one factual allegation in the complaint that addresses the alleged debt, as follows: "Plaintiff's real property was located in Fulton County, Georgia, and was encumbered by a mortgage loan." (Doc. 85 at 7, ¶12.) But Plaintiff has not alleged any facts indicating that this property was her personal residence, which would qualify the debt, as opposed to a rental or investment property, which would not. Plaintiff alleges that she is a citizen of Florida, (Doc. 85 at 4, ¶10), and her address of record is Florida, (*Id*. at 20; Dkt.).

Though the length of time that Florida has been Plaintiff's domicile is unknown, the Court cannot reasonably infer from these few facts that the Georgia property at issue was Plaintiff's personal residence. Plaintiff has failed to satisfy her obligation to "make a threshold showing that the money being collected qualifies as a 'debt.'" *See Oppenheim*, 627 F.3d at 837; *Nwaizuzu*, 2019 WL 2323611, at *3; *see also Pignato v. PHH Mortg. Corp.*, No. 2:19-CV-00261-SCJ-JCF, 2020 WL 7382307, at *5 (N.D. Ga. Apr. 17, 2020), (explaining that the allegations that plaintiff owned the real property and it was residential, alone, did not satisfy plaintiff's obligation to allege a consumer debt, as it could be debt for rental or investment property, which does not fall under the protection of the FDCPA, but because plaintiff also alleged other facts indicating the property was his "home," the court could reasonably infer that the subject loan was for plaintiff's personal residence, which would qualify as a consumer debt under the FDCPA), report and recommendation adopted, No. 2:19-CV-00261-SCJ-JCF, 2020 WL 7382322 (N.D. Ga. July 13, 2020); *Smith v. Nat'l Credit Sys., Inc.*, No. 1:13-CV-4219-WSD, 2014 WL 2003025, at *3-5 (N.D. Ga. May 15, 2014) (finding that plaintiff's debt arising from rental of the apartment for which he received a housing subsidy, was a consumer debt under the FDCPA); *Higgs v. Pendergast & Assocs., P.C.*, No. 1:10-CV-3729-HTW-JFK, 2011 WL 13319011, at *7 (N.D. Ga. Aug. 11, 2011) ("[a] mortgage loan to acquire a personal residence is a 'consumer debt'"), report and recommendation adopted, No. 1:10-CV-3729-HTW, 2011 WL 13319057 (N.D. Ga. Sept. 29, 2011).

Second, there are no allegations from which the Court can reasonably infer that Defendant Padgett Law Group committed any violation of the FDCPA. *See Buckley*, 2010 WL 9476172, at *6; *Brockman*, 2009 WL 10712200, at *3. For count two, Plaintiff lists two statute cites, as follows: "Count II—Violation of FDCPA, 15 U.S.C. §§ 1692e, 1692f (Against Padgett Law Group)," and states "Supported by ¶¶18-19, 21-23, 34-35." (Doc. 85 at 12.) As the Court previously advised Plaintiff, simply listing a statute and stating that Defendant violated the statute is insufficient to state a plausible claim, even with the liberal construction afforded to pro se litigants, (Doc. 42 at 5), and the "support[ing]" paragraphs cited by Plaintiff do not allow the Court "to draw the reasonable inference that the defendant is liable for the alleged misconduct." *See Iqbal*, 556 US. at 678; *see also Leonard*, 405 F. App'x at 387; *Douglas*, 535 F.3d at 1320. Those paragraphs state as follows:

- 18. On May 8, 2024, Padgett said a foreclosure sale occurred on May 7, 2024.

- 19. On May 9, 2024, Padgett admitted the file was "flagged for litigation."

- 21. Between February 2024 and April 2024, Plaintiff sent multiple written requests to Padgett Law Group seeking reinstatement figures, payoff information, and clarification of foreclosure status.

- 22. Padgett Law Group identifies itself as a foreclosure and debt-collection law practice, and by its own representations is a "debt collector" as defined by the FDCPA, 15 U. S.C. § 1692a(6).

- 23. Despite receiving these requests, Padgett failed to provide accurate and

consistent responses, instead issuing contradictory statements regarding the foreclosure.

- 34. Plaintiff offered to surrender voluntarily to avoid an eviction record. Padgett nevertheless pursued eviction, causing Plaintiff lasting credit and housing harm.

- 35. Hayes told Plaintiff foreclosure was proceeding despite Cenlar's cancellation notice.

(Doc. 85 at 7-9.)

Section 1692e provides in relevant part that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692f provides in relevant part that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." *See* 15 U.S.C. §§ 1692e, 1692f. Notwithstanding that Plaintiff has failed to show that the Georgia property's mortgage qualifies as a "debt," which alone is fatal to all of the FDCPA claims, the Court also cannot reasonably infer from the sparse fact allegations that Defendant Padgett Law Group engaged in any false, deceptive, misleading, unfair, or unconscionable means to collect. *See Iqbal*, 556 US. at 678; *see also Supra*, Section II(A). The public records show that Defendant's statement that "a foreclosure sale occurred on May 7, 2024," (Doc. 85 at 7, ¶18), was true; indeed, a non-judicial foreclosure sale did occur on May 7, 2024, (Doc. 89-3), and from what the Court can discern from Plaintiff's allegations, any contradictory statements about the foreclosure came from other entities, not Defendant Padgett Law Group—*i.e.*, Alliant Credit Union told regulators the foreclosure was judicial and handled through the courts, (Doc. 85

24

at 7, ¶14); Alliant Credit Union's bid sheet shows a foreclosure sale on January 2, 2024, (*Id.* at 7, ¶17); Cenlar FSB separately confirmed the foreclosure sale was canceled, (*Id.* at 7, ¶20); Cenlar FSB stated reinstatement was not permitted, contrary to loan documents, (*Id.* at 8, ¶32); and Alec Hayes told Plaintiff that foreclosure was proceeding despite Cenlar FSB's cancellation notice, (*Id.* at 9, ¶35). Although pro se pleadings are liberally construed, as discussed above, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions," and the Court cannot act as Plaintiff's de facto counsel or rewrite deficient pleadings to sustain an action. *See Supra*, Section II(A). For all the reasons discussed, Plaintiff has not alleged facts that are "adequate to raise [the] right to relief above a speculative level," and count two fails to state a plausible claim. *See Twombly*, 550 U.S. at 555; *Buchanan*, 727 F. App'x at 642.

The FDCPA claim against John Doe 4 also fails. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a "limited exception" to this rule "when the plaintiff's description of the defendant is so specific as to be "'at the very worst, surplusage.'" *Id.* (citations omitted). But that exception does not apply here. Plaintiff alleges that John Doe 4 is an individual "acting on behalf of Padgett Law Group," who "participated in misrepresenting foreclosure status, including asserting a May 7, 2024 sale, and in preparing or recording the Deed Under Power." (Doc. 85 at 10-11, ¶42.) Plaintiff further states that she "is already in possession of internal documents reflecting inconsistencies in the foreclosure

25

process, and discovery will confirm who authorized these representations and this individual's role in carrying them out." (*Id.*) Plaintiff's description is insufficient as it could include any employee of Padgett Law Group. *See Richardson*, 598 F.3d at 738 (finding that identifying John Doe as a guard at the correctional institute was insufficient to identify him among the other employed guards). Also, although Plaintiff alleges that Padgett Law Group is a "debt collector," there are no allegations that John Doe 4, individually, qualifies as a "debt collector" under the FDCPA. (Doc. 85); *see e.g., Fed. Trade Comm'n v. Primary Grp., Inc.*, 713 F. App'x 805, 807 (11th Cir. 2017) (explaining that a corporation's FDCPA violations, alone, are not enough to hold the owners, officers, or employees personally liable, but individuals may be held personally liable upon a showing that they had knowledge of the violations, and either directly participated in the practices, or had the authority to control them); *see also Kistner v. L. Offs. of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437–38 (6th Cir. 2008) (holding that subjecting a sole member of an LLC to individual liability for violating the FDCPA "will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil"). And regardless, as discussed above, Plaintiff has not shown that the Georgia property's mortgage qualifies as a "debt" under the FDCPA, nor sufficiently alleged that Padgett Law Group, including John Doe 4, committed any violation of the FDCPA. *See Oppenheim*, 627 F.3d at 837; *Nwaizuzu*, 2019 WL 2323611, at *3; *see also Supra*, Section II(A); *Pignato*, 2020 WL 7382307, at *5; *Smith*, 2014 WL 2003025, at *3-5;

*Higgs*, 2011 WL 13319011, at *7. Accordingly, count 23 fails to state a plausible claim.

### (b)    RESPA

For Count I, Plaintiff again lists statute cites "Count I—Violation of RESPA, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. 1024.35-36; Remedies under § 2605(f) (Against Cenlar FSB),"[9] and states "Supported by ¶¶31-33, 36-39." (Doc. 85 at 12.) As discussed above, simply listing a statute and stating that Defendant violated the statute is insufficient to state a plausible claim, even with the liberal construction afforded to pro se litigants, and the "support[ing]" paragraphs cited by Plaintiff do not allow the Court "to draw the reasonable inference that the defendant is liable for the alleged misconduct." *See Iqbal*, 556 US. at 678; *see also Leonard*, 405 F. App'x at 387; *Douglas*, 535 F.3d at 1320. The paragraphs cited state as follows:

- 31. Plaintiff requested reinstatement and redemption figures from Alliant, Padgett, and Cenlar.

- 32. Cenlar stated reinstatement was not permitted, contrary to loan documents.

- 33. Defendants offered HAF paperwork but refused to accept funds.

- 36. Between October 2023 and February 2025, Plaintiff sent multiple Qualified Written Requests ("QWRs") to Cenlar, including a written

---

[9] *See Beltz v. CitiMortgage, Inc.*, No. 1:15-CV-2649-AT, 2015 WL 12964644, at *2 (N.D. Ga. Sept. 11, 2015) (explaining that RESPA "is the remedial vehicle for violations of the [implementing] regulations [12 C.F.R. § 1024.30, *et seq.*]").

request delivered by FedEx, seeking reinstatement figures, payoff information, loss mitigation and clarification of foreclosure status. Cenlar failed to timely and adequately respond to multiple requests as required by 12 U.S.C. § 2605(e).

- 37. On Feb. 20, 2025, Plaintiff sent Cenlar a QWR under 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35-36.

- 38. Cenlar failed to acknowledge within five days.

- 39. Cenlar failed to provide a substantive response within thirty days.

(Doc. 85 at 8-9.)

Congress enacted RESPA "[i]n an effort to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs." *McCarley v. KPMG Int'l*, 293 F. App'x 719, 722 (11th Cir. 2008). "A plaintiff may bring a claim under the RESPA for a mortgage-loan servicer's failure to respond to a QWR [qualified written request] and recover any actual damages suffered as a result of this failure." *Frone v. JP Morgan Chase & Co.*, 695 F. App'x 468, 473 (11th Cir. 2017) (citations omitted). To state a claim under § 2605(e), a plaintiff must show that: "(1) the defendant is a loan servicer; (2) the plaintiff sent a valid QWR; (3) the defendant failed to respond within the required time period; and (4) the plaintiff is entitled to damages." *See Brown v. Bank of New York Mellon*, No. 1:13-CV-00214-SCJ-GGB, 2013 WL 12383164, at *3 (N.D. Ga. Aug. 13, 2013), report and recommendation adopted, No. 1:13-CV-0214-SCJ, 2013 WL 12383165 (N.D. Ga. Nov. 15, 2013). "Under RESPA, loan servicers have a duty to respond to a borrower's inquiry or qualified written request," but in order to trigger the

servicer's duty to respond, the QWR must meet certain statutory requirements, including that it request "information relating to the servicing of a loan"; provide "sufficient information for the servicer to identify the name and account of the borrower"; and set forth either "a statement of the reasons for the borrower's belief, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower." *Odum v. Specialized Loan Servicing*, No. 1:15-CV-01949-MHC-JFK, 2016 WL 4582070, at *3 (N.D. Ga. July 5, 2016) (citations and alterations omitted), report and recommendation adopted, No. 1:15-CV-1949-MHC, 2016 WL 4595940 (N.D. Ga. Aug. 1, 2016); *see also* 12 U.S.C. § 2605(e)(1)(A)-(B). Importantly, "[a] plaintiff who wishes to bring a § 2605(e) claim must show either actual damages or that the defendant has a 'pattern or practice' of violating § 2605(e) which justifies an award of statutory damages." *Brown*, 2013 WL 12383164, at *3; *see also Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) ("an allegation [of actual or statutory damages] is a necessary element of any claim under § 2605"); *Saundra McDaniel, Plaintiff, v. Wells Fargo Bank, N.A. & American Residential Leasing Co., Defendants*, No. 1:14-CV-2337-WSD, 2016 WL 1071101, at *6 (N.D. Ga. Mar. 17, 2016). "'[A] plaintiff "must also allege a causal link between the claimed damages and the defendant's alleged RESPA violation.'" *Odum*, 2016 WL 4582070, at *5 (citations omitted); *McDaniel*, 2016 WL 1071101, at *6 ("[t]o show actual damages, a plaintiff must 'demonstrate that [d]efendant's breach proximately caused the alleged damages'"). "Such a pleading requirement 'has the effect of limiting the cause of action to circumstances in which plaintiffs can

29

show that a [failure to comply with RESPA] has caused them actual harm.'" *See Odum*, 2016 WL 4582070, at *5 (citations omitted; alteration in original).

Here, Plaintiff does not attach a copy of any QWR she sent, but even if the Court finds that she sufficiently alleged submission of a valid QWR that triggered the duty to respond, Plaintiff has not alleged any actual damages that were proximately caused by Cenlar FSB's alleged failure to respond. (Doc. 85.) As damages Plaintiff states only: "On Count I (RESPA I Regulation X): actual damages; statutory damages for any pattern or practice of noncompliance; together with costs and reasonable attorney's fees as authorized by 12 U.S.C. § 2605(f), in an amount to be determined at trial." (Doc. 85 at 17-18.) This is nothing more than "a formulaic recitation" of the statute, and "will not do.'" *Leonard*, 405 F. App'x at 387; *see also Supra*, Section II(A). Plaintiff does not allege that she was not in default on the subject mortgage, (Doc. 85); thus, even liberally construed, the Court cannot reasonably infer that Cenlar FSB's failure to respond to any QWR was the proximate cause of the foreclosure, even to the extent that at least one QWR was sent prior to the foreclosure sale on May 7, 2024. (Doc. 85 at 9, ¶¶37-39 (alleging that Cenlar FSB failed to respond to QWR sent February 20, 2025); Doc. 85 at 9, ¶36 (alleging that Cenlar FSB failed to respond to QWRs sent between October 2023 and February 2025)); *see McDaniel*, 2016 WL 1071101, at *6 (citing cases finding no actual damages when the plaintiff was already in default at the time the QWR was sent, so a lack of response did not cause the plaintiff's injury regarding his loan payments, and finding no actual damages when plaintiff's lack of loan payments, not the defendant's failure to respond, caused

the alleged damages of late fees, penalties and interest). Plaintiff has not alleged facts that are "adequate to raise [the] right to relief above a speculative level," and count one fails to state a plausible claim. *See Twombly*, 550 U.S. at 555; *Buchanan*, 727 F. App'x at 642; *see also Frazile*, 382 F. App'x at 836 (affirming district court's conclusion that plaintiff failed to state a plausible RESPA claim because she failed to allege facts relevant to the necessary element of damages caused by assignment).

For the reasons discussed, the Court **RECOMMENDS** that Plaintiff's federal claims, (counts 1-4 and 23) be **DISMISSED WITH PREJUDICE**. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) ("dismiss[al] with prejudice . . . is fitting for failure to state a claim").

### C.    State Claims

Consistent with the deference given to state courts on issues of state law, there are limited circumstances in which federal courts may exercise supplemental jurisdiction over state-law claims. *Silas v. Sheriff of Broward Cnty., Fla.*, 55 F.4th 863, 865 (11th Cir. 2022); *see also Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 530 (11th Cir. 2015) (explaining that supplemental jurisdiction, also referred to as pendent jurisdiction, "permits federal courts to decide certain state-law claims involved in cases raising federal questions when doing so would promote judicial economy and procedural convenience") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348-49 (1988)). One such circumstance, which appears to be the basis for supplemental jurisdiction in this case, is when the

state-law claims "arise out of a common nucleus of operative fact with a substantial federal claim." *Silas*, 55 F.4th at 865.

Here, though Plaintiff's second amended complaint is sparse on facts and somewhat difficult to decipher, it appears that all of Plaintiff's claims, both federal and state, relate to the May 7, 2024, foreclosure on her Fulton County, Georgia property. (Docs. 85; 89-2; 89-3.) Plaintiff's claims, therefore, could be construed as all arising "out of a common nucleus of operative fact." *Silas*, 55 F.4th at 865. But "[a]lthough the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state-law claims after the federal claims are dismissed," as both the Supreme Court and the Eleventh Circuit have explained. *Silas*, 55 F. 4th at 865; *see also Carnegie-Mellon Univ.*, 484 U.S. at 350 n. 7 ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Ameritox, Ltd.*, 803 F.3d at 531 (discussing the Supreme Court's admonishment that "[n]eedless decisions of state law should be avoided," and that "[o]ne such needless decision would occur when a court decides issues of state law after the federal claims are dismissed before trial; in that situation, the state claims should be dismissed as well," though the Court later clarified that dismissal of pendent state-law claims is not mandatory) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (dismissal of

32

any remaining state claims is encouraged when the federal claims have been dismissed prior to trial). "A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed." *Silas*, 55 F.4th at 866.

Accordingly, because Plaintiff's federal claims are due to be dismissed, as discussed above, and this case is in the earliest stage of litigation, the Court **RECOMMENDS** declining to exercise supplemental jurisdiction, and **DISMISSING** Plaintiff's state claims, (counts 5-22), **WITHOUT PREJUDICE**. *See Carnegie-Mellon Univ.*, 484 U.S. at 343 (explaining that when federal claims have dropped out of the lawsuit in its early stages leaving only state claims, the balance of the factors to be considered—judicial economy, convenience, fairness, and comity—indicate that a case properly belongs in state court, and the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (explaining that when all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well, but the dismissal should be without prejudice as to re-filing in state court).[10]

---

[10] The Court notes that the statute of limitations for a wrongful foreclosure claim, is either four years, if tort-based, or six years, if contract-based. *See Anderson v. Invitation Homes*, No. 1:23-CV-04010-LMM-JCF, 2024 WL 3793920, at *4 (N.D. Ga. May 17, 2024), report and recommendation adopted, No. 1:23-CV-04010-LMM, 2024 WL 3833804 (N.D. Ga. June 10, 2024); *see also* O.C.G.A. § 9-3-24 and § 9-3-30. Thus, Plaintiff is not prejudiced if she believes in good faith that she can assert a wrongful foreclosure claim, which appears to be her true claim, in state court. (Doc. 85.)

### D.   Opportunity to Amend

Although pro se litigants are generally given at least one opportunity to amend a complaint before it is dismissed, Plaintiff's pro se status, alone, does not entitle her to multiple amendments. *Woldeab v. DeKalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018); *see also Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (finding that because plaintiff "already had been given an opportunity to correct his pleadings, the judge was not required to give him another chance"); *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) (holding that district court properly exercised its discretion by granting summary judgment without allowing Plaintiff to amend his complaint a second time). Here, Plaintiff has been given the opportunity to amend twice, with explicit guidance. (Docs. 42; 83.) Plaintiff should, therefore, not be granted any further opportunities to amend her complaint.

34

## III.    CONCLUSION

For the above reasons, the Court **RECOMMENDS** that the pending motions to dismiss the second amended complaint, (Docs. 87; 89; 90), be **GRANTED**, and that the federal claims (counts 1-4 and 23) be **DISMISSED WITH PREJUDICE**, and the state claims (counts 5-22) be **DISMISSED WITHOUT PREJUDICE**.

As all matters referred to the undersigned have been ruled upon, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned Magistrate Judge.

**SO RECOMMENDED and DIRECTED** March 30, 2026.


J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE

35